UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

KINGVISION PAY-PER-VIEW, LTD.,
as broadcast licensee of the
December 2, 2000 Trinidad/Vargas
Program,	REPORT AND
	RECOMMENDATION
			Plaintiff,
	04 CV 3624 (CBA) (MDG)
	– against –

TARDES CALENAS RESTAURANT,

			Defendant.
---------------------------------X

GO, United States Magistrate Judge:

    On May 16, 2001, plaintiff Kingvision Pay-Per-View, Ltd. (hereinafter "Kingvision") commenced suit against defendant Tardes Calenas Restaurant ("Tardes Calenas"), and several other defendants,[1] alleging that they had engaged in the illegal theft of a closed-circuit telecast of the December 2, 2000 boxing match between Trinidad and Vargas, in violation of 47 U.S.C. §§ 553(a) and 605. Following the entry of a default judgment against defendant, the matter was referred to The Honorable A. Simon Chrein to conduct an inquest and to report and recommend the amount of damages to be awarded. On April 12, 2005, the case was reassigned to the undersigned.

    For the foregoing reasons, this Court respectfully recommends that, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded

---

[1] See discussion infra at 3-4.

-1-

$10,000.00 in damages and $510.00 in costs from the defendant, for a total of $10,510.00.  It is further recommended that plaintiff's request for prejudgment interest be denied.

FACTUAL BACKGROUND[2]

Plaintiff Kingvision entered into a closed-circuit television licensing agreement (the "Agreement"), in which plaintiff was granted the commercial rights to televise and distribute the December 2, 2000 Trinidad/Vargas championship boxing match via closed encrypted satellite signal and circuit televisions located in various bars, restaurants, theaters, arenas, and in private homes throughout New York.  (Compl. ¶ 33; Lonstein Aff. ¶ 2).[3]  In addition, the Agreement gave plaintiff the exclusive right to exhibit all undercard or preliminary bouts prior to the match (collectively, the "Event") at these closed circuit television locations.  (Compl. ¶ 33).  These closed-circuit locations could only obtain access to the broadcast by entering into a contractual relationship with plaintiff, which required each establishment to pay a sublicense fee to Kingvision.  (Id. ¶¶ 33-35).

In order to receive access to the interstate satellite

---

[2] The facts as stated herein are derived from the Verified Complaint ("Compl.") filed under the original docket number, 01 CV 3263 (CBA), and from the Affidavit of Julie Cohen Lonstein, Esq., dated February 6, 2002, filed in support of the motion for default.  Since defendant is in default, the facts are undisputed. See discussion infra at 6.

[3] Citations to "Compl." refer to the Complaint filed in this action on May 7, 2003; citations to "Pl.'s Mem." refer to the Plaintiff's Inquest Memorandum, dated October 20, 2004.

transmission of the Event, each participating establishment was provided with electronic decoding equipment and satellite coordinates necessary to receive the electronically coded or scrambled signal. (Pl.'s Mem. at 2). Authorized residential cable subscribers could also obtain transmission of the Event through their residential pay-per-view cable system. (Id.)

Plaintiff alleges that defendant Tardes Calenas is a commercial establishment, located at 62-08 Roosevelt Avenue Woodside, New York 11377. (Compl. ¶ 23). Plaintiff further alleges that Tardes Calenas did not enter into a contract with Kingvision to receive transmission of the Event. (Id. ¶¶ 36-38). On the night of the event, December 2, 2000, an investigator for plaintiff, Oscar Patino ("Patino"), was present at Tardes Calenas when he observed the Event being intercepted, received, and then televised to patrons of the defendant, without prior authorization. (Lonstein Aff. ¶ 3, Ex. A). According to Patino's affidavit, he observed 25 patrons in Tardes Calenas while the Event was being displayed on three televisions, two twenty-seven inch sets, and one thirteen inch set. (Id.)

PROCEDURAL HISTORY

On May 16, 2001, plaintiff commenced this action, seeking statutory damages pursuant to 47 U.S.C. §§ 553 and 605, by filing the original summons and complaint under Docket No. 01 CV 03263 (CBA). In addition to naming Tardes Calenas as a defendant in the original action, plaintiff named the following individuals or corporations as additional defendants: (1) John Doe,

individually, doing business as Tardes Calenas Restaurant;[4] (2) Prospero Villalona, individually, and as an officer, director, shareholder and/or principal of Restaurant Salvadoreno Usuluteco ("Usuluteco"); (3) Usuluteco; (4) George Perez ("Perez"), individually, and as an officer, director, shareholder and/or principal of 45-08 Vernon Blvd. Corp.; (5) 45-08 Vernon Blvd. Corp.; (6) El Emperador Azteca Restaurant Corp., doing business as El Emperador Azteca Restaurant, also known as El Emperador Azteca Rest. ("El Emperador"); (7) John Doe, individually, and as an officer, director, shareholder and/or principal of El Emperador; (8) John Doe, individually, and doing business as T. Ayala Candy Store ("T. Ayala"); (9) T. Ayala; and (10) Consuelo Quintero, individually, and as an officer, director, shareholder and/or principal of Especialidades Nativas Inc. ("Nativas"); and (11) Nativas. (Compl. ¶¶ 5-31).

Plaintiff served Tardes Calenas on June 19, 2001, by serving the Summons and Complaint on an authorized agent of Tardes Calenas. (Lonstein Aff. Ex. D). Defendants Perez, 45-08 Vernon Blvd., and El Emperador were also served at or about that time. (See Lonstein Aff. Exs. C, E). When these defendants, including Tardes Calenas, failed to answer or otherwise respond to the complaint, plaintiff moved for entry of default as to these four defendants. The Clerk of Court then entered a default as to these defendants on February 12, 2002 under Docket No. 01 CV 3263

---

[4] Although John Doe, individually, doing business as Tardes Calenas Restaurant was named as a defendant in the Verified Complaint, it appears that service was not perfected as to this individual.

(CBA). Following entry of default, the district court referred the issue of damages to Magistrate Judge Chrein to conduct an inquest.

On November 8, 2002, Judge Chrein issued a Report and Recommendation, declining to recommend an award of damages as to Tardes Calenas and the other defaulting defendants. (Rept. of Nov. 8, 2002 at 1, 7). Judge Chrein determined that because the defaulting defendants acted independently and the claims asserted did not arise out of the same transaction or occurrence, plaintiff had improperly joined these defendants. (Id. at 5-6). He therefore recommended that plaintiff be required to commence separate actions against each defaulting defendant. (Id. at 7). By Order dated July 27, 2004, the district court directed the Clerk of Court to sever the co-defendants listed under the original docket number, and ordered plaintiff to proceed with separate actions against each of the defaulting defendants, by paying the appropriate filing fees. (Order of July 27, 2004 at 1-2).

Thereafter, on August 16, 2004, plaintiff purchased a new docket number, 04 CV 3624, to commence this action naming Tardes Calenas as the only defendant. On October 20, 2004, plaintiff then served Tardes Calenas with a copy of Plaintiff's Inquest Memorandum bearing the newly purchased docket number. (Certificate of Service of Julie Cohen Lonstein, Esq.; Pl.'s Mem. at 8).

On June 23, 2005, the Clerk of Court noted Tardes Calenas's default and issued a certificate of default under the present

docket number.  Having received no opposition papers from the defendant, this Court reviewed the plaintiff's submission and reports as follows.

DISCUSSION

1. Default

When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Hawthorne v. Citigroup Data Systems, 216 F.Supp.2d 45, 47 (E.D.N.Y. 2002). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

Plaintiff alleges that the defendant violated 47 U.S.C. §§ 553(a)(1)[5] and 605(a) through the unauthorized reception of plaintiff's satellite communications.  However, a court is not permitted to grant damages under both statutes for a single illegal transmission.  See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123 (2d Cir.), cert. denied, 519 U.S. 929 (1996).  Rather, where a defendant is found to have violated both statutes, the

---

[5]Section 553(a)(1) provides, in pertinent part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

court should award damages only pursuant to Section 605, which generally affords higher damages.  Id.; see also Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. 107, 110 (E.D.N.Y. 1997).

Here, the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605.  Section 605(a), which provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communications and divulge or publish the . . . contents . . . of such intercepted communication to any person," 47 U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as a satellite or radio transmission. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123; see also Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01-3945, 2002 U.S. Dist. LEXIS 13686, at *4-5 (E.D.N.Y. May 16, 2002); Taco Rapido Restaurant, 988 F. Supp. at 109. Here, defendant's alleged conduct - - the unauthorized interception, receipt, and broadcast of the Event derived from satellite communications - - violates this statute.

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment.  The burden is on the plaintiff to establish its entitlement to recovery.  See Clague v. Bednarski, 105 F.R.D. 552, 553 (E.D.N.Y. 1985).  While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151,

156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)).

In the instant case, plaintiff has submitted, inter alia, an inquest memorandum, affidavits from Ms. Lonstein and from plaintiff's Vice President, Donna K. Westrich ("Westrich"), Patino's report and the Verified Complaint from the original docket number. Where, as here, the plaintiff has filed reasonably detailed affidavits and exhibits pertaining to the damages incurred which have not been opposed, the Court can make an informed recommendation regarding damages without an evidentiary hearing. Action S.A. v. Marc Rich and Co., Inc., 951 F.2d 504, 508 (2d Cir), cert. denied, 503 U.S. 1006 (1992) (court has discretion to determined whether to hold evidentiary hearing or rely on written submissions).

2. Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory damages. 47 U.S.C. § 605(e)(C)(i). Section 605 authorizes penalties "for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added).

In determining the amount of damages that can be imposed for each violation within the range of $1,000.00 to $10,000.00 per violation, Section 605 leaves the decision within the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II);

see also Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 589 (E.D.N.Y. 1997); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480 (D. Conn. 1993) (reducing an award from $250,000.00 to $10,000.00 for commercial broadcast of a boxing match). The factors to be considered in determining the appropriate amount of damages include the pecuniary loss sustained by the victim, any unlawful monetary gains by the defendant, and whether there have been repeat violations over an extended period of time. See Champs of New Haven, Inc., 837 F. Supp. at 483.

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and televised broadcast of a cable program by a commercial establishment. See, e.g., Home Box Office v. Gee-Co., Inc., 838 F. Supp. 436, 440 (E.D. Mo. 1993); Champs of New Haven, Inc., 837 F. Supp. 480. Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast. See, e.g., Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 U.S. Dist. LEXIS 8802, at *10 (awarding $50.00 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same); Taco Rapido Restaurant, 988 F. Supp. at 111 (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding $50.00 per patron).

Plaintiff asserts that there are a number of components to the pecuniary loss suffered here, including lost sublicense fees, lost admission charges, and loss of good will. Here, plaintiff

not only lost the sublicense fee that it would have been entitled to charge had the defendant entered into an agreement to broadcast the Event, but also the potential admission fees for at least twenty-five (25) patrons present during the unauthorized broadcast. In addition, as plaintiff argues, theft of its services deprives plaintiff of its good will, reputation, and business investment by raising costs to its paying customers and deterring potential paying customers from seeking proper authorization from plaintiff to televise plaintiff's programming. However, plaintiff has provided no information as to either the sublicense fee it charged to establishments the size of Tardes Calenas or the admission fee it may have been entitled to collect.

Plaintiff has submitted sufficient evidence of the number of patrons present at Tardes Calenas during part of the broadcast. I recommend that damages be assessed on a per-patron basis, in an amount which also accounts for the profits earned by defendant and good will lost by plaintiff. Thus, I recommend that plaintiff be awarded damages based on $100 per patron. See 45 Midland Enters., Inc., 858 F. Supp. at 45 (1994 decision awarding $50 per patron); Taco Rapido, 988 F. Supp. at 111 (1997 decision awarding $50 per patron). Since the affidavit of plaintiff's investigator indicates that 25 patrons were present during the public viewing of the event, I recommend that damages be awarded in the amount of $2,500.00.

3. <u>Enhanced Damages</u>

Plaintiff also seeks enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii), which provides for additional awards of up to a maximum of $100,000.00 for violations committed willfully and for purposes of private financial gain. <u>See</u> <u>Joe Hand Promotions v. Burg's Lounge</u>, 955 F. Supp. 42, 44 (E.D. Pa. 1997) (awarding $1,000.00 in statutory damages under § 605(e)(3)(C)(i)(II), plus an additional $1,000.00 based on the willful nature of the violation under § 605(e)(3)(C)(ii) where defendants were found to have broadcast a boxing event in their respective taverns); <u>Gee-Co, Inc.</u>, 838 F. Supp. at 439 (awarding statutory damages of $2,000.00, increased by $2,000.00 for willfulness under 47 U.S.C. § 553, plus $1,000.00 for willfulness under § 605(a), where defendant displayed a boxing match to sixty patrons in his bar); <u>Newschannels Corp. v. Koplik</u>, 903 F. Supp. 333, 334 (N.D.N.Y. 1995) (awarding increased damages where defendant was found to possess six cable decoders and finding that defendant behaved willfully and with the hope of financial gain). This section clearly applies to persons or entities which operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to its patrons. <u>See</u> <u>Taco Rapido Restaurant</u>, 988 F. Supp. at 112.

Willful behavior under Section 605 has been interpreted to include "'disregard for the governing statute and an indifference to its requirements.'" <u>ON/TV of Chicago v. Julien</u>, 763 F.2d 839, 844 (7th Cir. 1985) (quoting <u>TransWorld Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 127 (1985)). Courts may draw an

inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.  See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

Here, it is clear that defendant intercepted and televised the Event without entering into a licensing agreement with plaintiff or paying fees to plaintiff.  (Compl. ¶¶ 36-38).  To do so, defendant must have utilized an authorized decoder, illegally transferred an authorized decoder to the location, or illegally altered cable service to bring the signal to the restaurant.  According to plaintiff's uncontradicted submissions, the Event could not have been mistakenly or innocently intercepted. (Westrich Aff. ¶ 9).[6]  See Googies Luncheonette, Inc., 77 F. Supp. 2d at 490 (stating that "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distributions systems.").  The defendant then televised the Event to patrons who were not required to pay the admittance fee customarily charged by plaintiff under its sublicense agreement, but who purchased meals or drinks from defendants while viewing the Event.  Indeed, it can be inferred that Tardes Calenas was able to draw patrons into its establishment by offering them the ability to view the Event.  Thus, Tardes Calenas's exhibition of the Event on three televisions, two of which were relatively large, very likely led

---

[6]Citations to "Westrich Aff." refer to the affidavit of Donna Westrich, dated February 6, 2002, attached to Pl.'s Mem.

to an increase in patrons and profits from food and drinks sold. See Googies Luncheonette, Inc., 77 F. Supp. 2d at 490-91.  Thus, the evidence indicates that defendant acted willfully in illegally intercepting the Event, and that it did so for private financial gain.

I therefore recommend that the court award plaintiff enhanced damages of $7,500.00.  See, e.g., Kingvision Pay-Per-View, Ltd. v. Body Shop, 2002 WL 393091, at *4 (S.D.N.Y. Mar. 13, 2002) (awarding $10,000 in enhanced damages against a bar which broadcast a boxing match without authorization); Cablevision Sys. New York City Corp. v. Flores, No. 01-9351, 2001 U.S. Dist. LEXIS 9351 (S.D.N.Y. July 6, 2001) (awarding $10,000.00 in enhanced damages based on the need for deterrence, defendant's willful conduct, and the defendant's failure to appear); Joe Hand Promotions, Inc.  v. West, et al., No. CIV.A.99-0983E(M), 2000 WL 1610666 (W.D.N.Y. Oct. 26, 2000) (where no special circumstances are shown, a trebling of damages is a "reasonable deterrence against future violations") (quoting Googies Luncheonette, Inc., 77 F. Supp.2d at 490-91).

4.  Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff seeks $510.00 in costs from the defendant.[7]  In support of that request, plaintiff has submitted an affidavit from Donna K. Westrich, attesting to the payment of $275.00 to the investigator

---

[7] Although the statute also provides for an award of attorney's fees, plaintiff's counsel does not appear to be requesting fees in this application.  (See Pl.'s Mem.)

for his services.  (Westrich Aff. ¶ 6).  In addition, plaintiff seeks reimbursement for filing fees of $150.00 and service of process fees in the amount of $85.00 from defendant.  (Lonstein Aff. ¶ 36).

I recommend that the court award plaintiff the expenses it incurred for the investigator  since the investigation clearly was "incidental and necessary" to the prosecution of this case. See Amato v. City of Saratoga Springs, 991 F. Supp. 62, 68 (N.D.N.Y. 1998) (citing Northcross v. Board of Education, 611 F.2d 624, 639 (6th Cir. 1979)); see also Rolex Watch U.S.A., Inc. v. Brown, No. 01 CIV.9155 (JGK) (AJP), 2002 WL 1226863, at *4 (S.D.N.Y. June 5, 2002) (awarding investigative fees in trademark infringement action); Video Aided Instruction, Inc. v. Y & S Express, Inc., 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (awarding fees); International Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) (acknowledging investigate fees recoverable as a cost under § 605); Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1439 (S.D.N.Y.  1994) (approving $75.00 rate for investigators as within "the reasonable range of rates" paid in the district).  I thus further recommend that the court award costs of $150.00 for the Court's filing fee, $85.00 for service of process fees and $275.00 for investigative fees, for a total of $510.00 in costs.

5.  Interest

Plaintiff also seeks an award of prejudgment interest. Section 605 of the Communications Act does not specifically

provide a statutory basis for such an award. However, courts in this Circuit have made discretionary awards of prejudgment interest in the absence of statutory authorization, where such an award was necessary to compensate the aggrieved party. See Wickham Contracting Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, 955 F.2d 831, 834 (2d Cir. 1992).

Here, the Court finds that the award of statutory damages and enhanced damages, which are in part punitive, is sufficient to make the plaintiff whole under the circumstances and the undersigned sees no reason for an award of interest. See id. at 835 (stating that prejudgment interest should not be awarded "if the statutory obligation on which interest is sought, is punitive in nature"); see also Entertainment by J&J Inc. v. Miraldo Rest., Inc., No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *16 (S.D.N.Y. Apr. 23, 2003).

Accordingly, this Court respectfully recommends that plaintiff's request for an award of prejudgment interest be denied.

## CONCLUSION

In summary, this Court respectfully recommends that plaintiff be awarded $10,000.00 in damages, plus costs in the amount of $510.00, for a total of $10,510.00. It is further recommended that plaintiff's request for prejudgment interest be denied.

Any objections to this Report and Recommendation must be

filed with the Clerk of the Court, with a copy to the undersigned, the Honorable Carol B. Amon and the other party, on or before September 13, 2005. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED.

Dated: Brooklyn, New York
August 22, 2005

/s/
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE